IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SCOTT M. CAMELIN,**

        **Petitioner,**           **CASE No. 2:21-CV-4070**
        v.          **JUDGE MICHAEL H. WATSON**
         **Magistrate Judge Kimberly A. Jolson**

**WARDEN, SOUTHEASTERN
CORRECTIONAL INSTITUTION,**

        **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This case has been referred to the Undersigned pursuant to 28 U.S.C. § 636(b) and Columbus' General Order 14-1 regarding assignments and references to United States Magistrate Judges.

This matter is before the Court to consider the Petition (ECF No. 1), Respondent's Motion to Dismiss (ECF No. 7), Petitioner's Traverse and Response in Opposition (ECF No. 11), the Amended *Pro Se* Traverse (ECF No. 13), as well as Petitioner's motions for discovery (ECF No. 14) and an evidentiary hearing.  (ECF No. 15.)   For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED** and Petitioner's motions be **DENIED**.

**I.  BACKGROUND**

On May 19, 2017, in case number 17CR207, a Ross County, Ohio Grand Jury returned a nineteen-count Indictment charging Petitioner with ten counts of Rape and nine counts of sexual battery.  Subsequently, Petitioner was indicted in case number 17CR305 with one additional count of sexual battery involving the same minor victim.  On April 17, 2018, Petitioner pled no contest

1

to three counts of sexual battery in case number 17cr207 and was sentenced to a total term of ten-years imprisonment. All other counts and case number 17cr305 were dismissed in exchange for the plea.

Still represented by trial counsel James Boulger, Petitioner took a timely appeal, raising as his sole claim for relief the alleged denial of his right to a speedy trial. On March 22, 2019, the Fourth District Court of Appeals overruled Petitioner's single assignment of error and affirmed the judgment of the trial court, summarizing the facts of the case as follows:

> On May 19, 2017, a Ross County Grand Jury returned an indictment that charged appellant (Case No. 17CR207) with 19 counts of offenses that involved his daughter (A.C.), including 10 counts of rape in violation of R.C. 2907.02 and 9 counts of sexual battery in violation of R.C. 2907.03. On May 20, 2017, law enforcement arrested appellant. Appellant filed a demand for bill of particulars on May 25, 2017 and requested the prosecution provide information about the specific time and location of each alleged occurrence. On July 21, 2017, the grand jury returned an additional indictment (Case No. 17CR305) that included a count of sexual battery. On November 3, 2017, appellant (1) filed a motion in limine regarding the rape shield law and its implications, and (2) argued that the bill of particulars is not sufficiently specific and requested the court compel the prosecution to provide more details. On November 27, 2017, the prosecution filed its memoranda contra to appellant's motion in limine and appellant's motion to compel a supplemental bill of particulars. On November 27, 2017, appellant filed a notice of alibi.
>
> On the morning of trial on December 4, 2017, the prosecution filed (1) a supplemental bill of particulars, and (2) a motion in limine that requested the trial court to prohibit appellant from introducing evidence at trial that pertained to the victim's alleged prior acts and conduct, and to prohibit certain witness testimony regarding those prior acts. At that point, when confronted with the more detailed bill of particulars, appellant, understandably, felt compelled to request a continuance of the jury trial. The court granted appellant's request and continued the matter to April 16, 2018.
>
> On April 6, 2018, appellant filed an amended notice of alibi and a motion to dismiss the indictment. In particular, appellant alleged that the state had failed to afford him a speedy trial within the R.C. 2945.71(C)(2) and (E) time limits. On April 12, 2018, appellant filed a second motion to dismiss the other indictment, also based on speedy trial grounds.

> On April 16, 2018, the trial court held a hearing to consider the evidence and arguments pertaining to the motions to dismiss and the speedy trial issue. At the hearing, Child Protection Center employee Julie Oates testified that during her interview the victim disclosed very few details about the specific dates and times of the alleged incidents. Chillicothe Police Detective Twila Goble also testified that she first spoke with the victim at her high school, and subsequently at the Child Protection Center, on several occasions at the victim's home, twice at Children's Services and three or four times at the prosecutor's office. Goble testified that, sometimes the victim was vague in her recollection of specific dates and times, but did relate that her abuse occurred "on an almost daily basis" during the three months the family resided at the Quality Inn. Goble further testified that, on the Saturday before the December 4, 2017 scheduled trial date, she spoke with the victim for "hours and hours and hours * * * [b]ecause [A.C.] was remembering specifics and had started talking to us about it." When asked whether they conveyed to defense counsel the new information the victim had provided on that Saturday, Goble said yes. When asked how many times she met with the victim to attempt to obtain information about the specific dates, Goble replied "at least seven." Finally, the victim testified about her interviews and the information that she provided to the authorities.
>
> On April 17, 2018, the trial court overruled appellant's motions to dismiss. That same day, appellant pled no contest to three counts of sexual battery (Counts 11, 13, and 19 in Case No. 17CR207) in violation of R.C. 2907.03, all third-degree felonies. The state then dismissed Case No. 17CR305 and Counts 1-10, 12, and 14-18 in Case No. 17CR207. At the sentencing hearing, the trial court sentenced appellant to serve three years in prison on Count 11, three years on Count 13, and four years on Count 19, with the sentences to be served consecutively for a ten year total prison sentence. This appeal followed.

*State v. Camelin*, No. 18CA3642, 2019 WL 1368416, *1-2 (Ohio App. 4th Dist. Mar. 22, 2019).

Petitioner's counsel sought review by the Ohio Supreme Court. On July 23, 2019, the Ohio Supreme Court declined to exercise jurisdiction and dismissed the appeal. *State v. Camelin*, 156 Ohio St.3d 1464 (2019). Petitioner did not seek a writ of certiorari before the United States Supreme Court.

## II. HABEAS PROCEEDINGS

On August 2, 2021, Petitioner, proceeding *pro se*, filed the instant federal habeas petition, raising a single claim for relief:

Ground One: Due Process, Speedy Trial

3

> Supporting Facts: On the day of trial Dec. 4 the prosecutor filed a supplemental bill of particulars claiming that the victim gave them all new information two days before trial. The truth is there was no new information. In the discovery is evidence of work records, medical record[s] and school records which the prosecutor's office had for months. The prosecutor forced a continuance by lying to the court.

(ECF No. 1, at PAGEID # 5.)

On November 10, 2021, Respondent filed a Motion to Dismiss the Petition as untimely. (ECF No. 7.) Respondent argues that Petitioner's conviction became final on October 21, 2019, ninety-days after the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal, when Petitioner failed to file a writ of certiorari to the United States Supreme Court. Respondent notes that the AEDPA statute of limitations required Petitioner to file this habeas action within one year of his conviction becoming final, or by October 20, 2020, yet Petitioner waited more than nine extra months, until August 2, 2021, to file this action.

On December 27, 2021, and without filing for leave to amend his petition, Petitioner filed a Traverse, setting forth two additional grounds for relief and rewording and renumbering his first ground for relief as ground three. (ECF No. 11, at PAGEID # 245.) All three grounds for relief raise the same general cause of action for denial of Petitioner's right to due process and a speedy trial. On January 6, 2022, and again without leave to do so, Petitioner filed an "Amended Pro se Traverse," setting forth a fourth ground for relief asserting actual innocence. (ECF No. 13, at PAGEID # 518-522.)

**III. DISCUSSION**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. § 2244(d). The statute provides:

4

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Here, Petitioner's judgment of conviction became final under the provision of § 2244(d)(1)(A) on October 21, 2019, when the ninety-day period in which to petition the United States Supreme Court for a writ of certiorari expired. The statute of limitations expired one year later, in October 2020. Petitioner waited until August 2021 to file this habeas petition. So it is untimely.

Petitioner asserts that two obstacles prevented him from filing his petition within the statutory limitations period. First, Petitioner claims that he had difficulty obtaining his discovery and paperwork from his prior attorney, James Boulger. (Petition, ECF No. 1, at PAGEID # 13-14.) He says that he has written at least five letters to his prior counsel requesting information, and he also filed a grievance with the Office of Disciplinary Counsel. (*Id*.) Second, Petitioner asserts the Southeastern Correctional Institution "was shut down from April 2020 until March 2021 with the COVID-19 protocol" and he had "no access to the law library during the pandemic." (*Id*. at PAGEID # 14.) Petitioner also states that he is actually innocent, and the Court should excuse his untimeliness for this reason. For the reasons that follow, the Undersigned finds each of Petitioner's arguments unavailing and recommends dismissal of the petition.

### A. Doctrine of Equitable Tolling

Although the petition is untimely, AEDPA's statute of limitations period is not a jurisdictional bar and is subject to equitable tolling under certain circumstances. *Holland v. Florida*, 560 U.S. 631 (2010). Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). *See also Hall v. Warden*, 662 F.3d 745, 749 (6th Cir. 2011). Yet the equitable tolling doctrine should be granted "sparingly," *Robertson*, 624 F.3d at 784, and only where a petitioner has diligently pursued relief and extraordinary circumstances prevented his timely filing. *See Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 649 (internal quotation omitted).

### 1. Unsuccessful Attempts to Obtain Case File

The gist of Petitioner's first argument is that he is entitled to equitable tolling of the AEDPA limitations period because he was unable to obtain his case file from prior counsel, despite repeated requests. In *Holland v. Florida*, the Supreme Court held that the ineffective assistance of counsel may in some instances constitute an extraordinary circumstance that, along with a defendant's exercise of reasonable diligence, warrants equitable tolling. 560 U.S. at 651, 653-54. Not all attorney misconduct, however, is sufficient. Only "professional misconduct that . . .

6

amount[s] to egregious behavior [ ] create[s] an extraordinary circumstance that warrants equitable tolling." *Id*. at 651. Thus, "a garden variety claim of attorney negligence," for example, will not suffice. *Id*. at 652. In *Maples v. Thomas*, 565 U.S. 266 (2012), the Supreme Court considered it "abandonment" when a petitioner's post-conviction counsel ceased representing him in the midst of post-conviction proceedings, and failed to file a notice of withdrawal or inform the client or the court of their departure. *Id*. at 270-71. There, the petitioner was "left without any functioning attorney of record," and without notice "that he had better fend for himself." *Id*. at 288. In a more recent case, the Sixth Circuit left open the possibility that a habeas petitioner could demonstrate extraordinary circumstances absent a showing of abandonment by his counsel. In *Nassiri v. Mackie*, 967 F.3d 544, 549-50 (6th Cir. 2020), the petitioner alleged that his attorney "disregarded [his] express concern about [the attorney's] incorrect calculation of his filing deadline" and "flouted requests to file his petition on time or early." *Id*. at 549. The Sixth Circuit held that the facts, as alleged, could constitute extraordinary circumstances and remanded to the district court to give the petitioner an opportunity to develop his equitable tolling argument. *Id*. at 550.

This case is different. Here, Petitioner has not alleged that his prior counsel remained counsel for purposes of pursuing a habeas corpus action. To the contrary, Petitioner alleges that he and Attorney Boulger parted ways, and Petitioner wanted his case file returned. It is apparent that Petitioner did not believe Attorney Boulger continued to represent him, or would be filing a habeas petition on his behalf. This is evidenced by the letters to Attorney Boulger, attached as exhibits to Petitioner's Traverse, (ECF No. 11-14, at PAGEID # 464-70), which include a letter dated March 5, 2020, expressly stating, "I'm going to act as my own lawyer." (*Id*. at PAGEID # 464.) Knowing he was acting as his own lawyer, and assuming that Attorney Boulger was

7

negligent in failing to return the case file, Petitioner still has not alleged that he diligently attempted to re-create his case file and obtain documents by other means before the limitations period expired.

Perhaps more importantly, Petitioner has not explained how his lack of a complete case file prevented him from filing his habeas petition and asserting what amounts to a single claim for relief – the denial of his right to a speedy trial. *See, e.g.*, *Hall v. Warden*, 662 F.3d 745, 750-51 (6th Cir. 2011) (rejecting the petitioner's argument that he was entitled to equitable tolling because of his lack of access to the trial transcript). Much of the information Petitioner sought from Attorney Boulger is not directly relevant to the speedy trial claims Petitioner asserts in the petition. *See, e.g.*, Letter dated May 18, 2021, requesting flash drives with forensic interview of victim and videos. (ECF No. 11-14, at PAGEID # 469.) In a letter dated May 11, 2021, Attorney Boulger expressed safety concerns about mailing some of the information Petitioner sought to the correctional institution, citing "the extremely sensitive nature of some of the materials that are contained in your file," and noting "[o]f the several persons that I have represented who have been convicted of child sex offenses, you are the first to request delivery of their case materials to their site of incarceration." (*Id*. at PAGEID # 486.)

It appears from a letter purporting to be dated September 14, 2021, that Petitioner still had not received the case file when he filed his habeas petition on August 2, 2021, nine months after the statutory limitations period expired. (*Id*. at PAGEID # 488.) It is unclear how he was able to file his petition in August 2021 without a complete case file, but could not do so in October 2020. Indeed, Petitioner has always sought to challenge his conviction on the basis of a speedy trial violation, and in August 2021, was able to complete the fill-in-the-blank standard form petition with the details surrounding the tolling of his speedy trial rights and the entry of his no-contest

plea. Simply put, Petitioner was in the same position in August 2021 as he was in October 2020, and he could have filed his standard form petition before the statutory limitations period expired.

Under these circumstances, the Undersigned concludes that Petitioner has not acted with sufficient diligence to warrant equitable tolling on the basis that his prior counsel did not provide his case file. *See, e.g., Burns v. Schroeder*, 2:21-CV-192, 2021 WL 4427058, at *3 (W.D. Mich. Sept. 27, 2021) (finding petitioner "offers no reason he could not timely submit the Court's approved form habeas petition" that is a "fill-in-the-blank document that asks for information readily available to Petitioner by way of the state court briefs that counsel had already prepared and filed.").

One final point. Three of the five letters Petitioner sent to Attorney Boulger requesting the return of his case file and discovery are dated *after* the one-year statute of limitations expired. The same is true of the grievance Petitioner filed with the Office of Disciplinary counsel in May 2021. To the extent Petitioner claims he made diligent efforts to obtain his case file in order to prepare his petition, these letters do not support Petitioner's efforts to file the petition in a timely manner.

### 2. COVID-19 Pandemic

Petitioner's second argument for tolling focuses on the circumstances created by the COVID-19 pandemic. Petitioner claims the prison was "shut down from April 2020 until March 2021" with "no access to the law library." (ECF No. 1, at PAGEID # 14.) It is well-settled that a prisoner's *pro se* incarcerated status, lack of knowledge of the law, and limited access to the prison's law library or to legal materials do not justify equitable tolling. *See Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). *See also Hall v. Warden*, 662 F.3d 745, 750-51 (6th Cir. 2011); *Hager v. Warden*,

No. 2:21cv2472, 2021 WL 2291319, *3 (S.D. Ohio June 4, 2021), *report and recommendation adopted*, 2021 WL 2670622 (S.D. Ohio June 29, 2021) (Sargus, D.J.); *Chapman-Sexton v. United States*, 2:16-CR-00141(1), 2021 WL 292027, *3 (S.D. Ohio Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 982718 (S.D. Ohio Mar. 16, 2021) (Marbley, Chief D.J). Such conditions are typical for many prisoners, and therefore do not constitute extraordinary circumstances. *Chapman-Sexton*, 2021 WL 292027 at *3 (citing *Adams v. Chillicothe Corr. Inst.*, No. 2:16-CV-563, 2016 WL 4442826, *2 (S.D. Ohio Aug. 22, 2016)).

The Undersigned has recognized that the impact of COVID-19 may constitute an "extraordinary circumstance" for purposes of equitable tolling under certain circumstances. *See Hager*, 2021 WL 2291319, *3 ("The COVID-19 pandemic may qualify as an extraordinary circumstance justifying equitable tolling of the statute of limitations."). *See also Chapman-Sexton*, 2021 WL 292027, *3; *Pickens v. Shoop*, No. 1:19-CV-558, 2020 WL 3128536, at *3 (S.D. Ohio June 12, 2020); *Taylor v. Valentine*, No. 5:20cv0139-TBR, 2021 WL 864145, at *2 (W.D. Ky. Mar. 8, 2021). Still, it is the petitioner's burden to establish equitable tolling. *Hager*, 2021 WL 2291319, *3. And, "[c]ourts have consistently held that general allegations of placement in segregation and lack of access to legal materials are not exceptional circumstances warranting equitable tolling, especially where a petitioner does not sufficiently explain why the circumstances he describes prevented him from timely filing a habeas petition." *Andrews v. United States*, Case No. 17-1693, 2017 WL 6376401, at * 2 (6th Cir. Dec. 12, 2017).

Even in cases recognizing that the circumstances created by COVID-19 could amount to "extraordinary circumstances" in some instances, those courts have found that a petitioner seeking equitable tolling on such a basis still must demonstrate fact-specific circumstances related to the pandemic that specifically hindered the petitioner's ability to file a habeas petition. *See, e.g.*, *Rush*

10

*v. Sec'y, Fla. Dep't. of Corrections*, 21-10218-C, 2021 WL 3134763, at *1 (11th Cir. June 22, 2021) (finding petitioner "could not show extraordinary circumstances, as his circumstances were not different than any other prisoner attempting to access legal resources, as they all were subject to COVID-19 protocols"). *See also Chapman-Sexton*, 2021 WL 292027, at *3 (observing that COVID-19 presented an "extraordinary circumstance" generally but concluding that it did not in this case because petitioner failed to adequately explain why COVID-19 prevented him from timely filing his petition); *Pryor v. Erdos*, No. 5:20-CV-2863, 2021 WL 4245038, at *9 (N.D. Ohio Sept. 17, 2021) (concluding general complaints that COVID-19 prevented access to unidentified legal materials while in prison was insufficient to carry a petitioner's burden of demonstrating that an "extraordinary circumstance" prevented timely filing because petitioner failed to sufficiently explain what additional materials he needed or why lack of access to those materials actually prevented him from timely filing his petition); *Dragasits v. Covello*, 3:21-CV-1459-CAB-MDD, 2022 WL 207730, at *7-8 (S.D. Cal. Jan. 24, 2022) (noting that most courts addressing the issue "have found that general claims of prison lockdowns and lack of access to the prison law library as a result of the COVID-19 pandemic" alone are insufficient to constitute the extraordinary circumstances required to permit equitable tolling); *Russi v. Smith*, 20-4580, 2022 WL 118110, at *2 (E.D. Pa. Jan 12, 2022) ("The COVID-19 pandemic does not automatically warrant equitable tolling . . . The Petitioner must establish that he was pursuing his rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion.") (emphasis in original); *Sholes v. Cates*, No. 1:21-cv-1006-DAD-HBK, 2021 WL 5567381, at *4 (E.D. Cal. Nov. 29, 2021) (concluding prisoner not entitled to equitable tolling during COVID outbreak which caused the law library to be closed "for months" and thereafter was open with only limited access); *United States v. Marshall*, 5:21cv72, 2021 WL 3854469, *2 (E.D. Ky. August 5, 2021),

*report and recommendation adopted*, 2021 WL 3844749 (E.D. Ky. August 27, 2021) (collecting cases).

Cases where equitable tolling has been applied involve petitioners who diligently pursued their rights, and would have timely filed their petitions but for the obstacles caused by COVID-19. *See, e.g.*, *Fitzgerald v. Shinn*, No. 19-cv-5219, 2020 WL 3414700, at *2 (D. Ariz. June 22, 2020) (opining that petitioner likely entitled to equitable tolling where counsel demonstrated their efforts to investigate and pursue petitioner's rights but requiring petitioner to first file his habeas petition before ruling); *Dunn v. Baca*, No. 3:19-cv-702, 2020 WL 2525772, at *2 (D. Nev. May 18, 2020) (granting equitable tolling request where pandemic prevented counsel from obtaining necessary court records).

The record in this case does not indicate that the impact of any extraordinary circumstances imposed by COVID-19 actually prevented Petitioner from timely filing this federal habeas corpus petition within the one-year period following the expiration of time to petition for writ of certiorari. As noted above, Petitioner's judgment of conviction became final on October 21, 2019. Nearly six months – half of the statutory time limitation – passed from that date and the March/April 2020 pandemic-related restrictions imposed within the prison. Petitioner does not allege or demonstrate that the prison law library was unavailable or subject to restrictions on access to legal materials during this initial five to six month period that he had to file his petition before the pandemic started. As stated above, the primary basis that Petitioner has sought to challenge his convictions is the denial of his right to a speedy trial. The basis of this claim was known to Petitioner, and Petitioner's "failure to demonstrate that he diligently pursued his claims (or even took *any* action) before the COVID-19 health crisis took hold is fatal to his timeliness argument." *United States v. West*, 4:18-CR-737, 2022 WL 44670, *4 (N.D. Ohio Jan. 5, 2022) (emphasis in original).

12

While Petitioner complains generally that COVID-19 prevented him from filing his petition, he fails to explain how the restrictions actually hindered his ability to do so. In short, Petitioner fails to carry his burden of demonstrating either that he was diligent or that an "extraordinary circumstance" stood in his way and prevented the timely filing of his petition. Petitioner's vague and generalized contentions do not demonstrate that the impact of the COVID-19 pandemic actually interfered with his ability to file a timely habeas petition.

### B. Actual Innocence

In addition to equitable tolling, "[a] habeas petitioner is entitled to an equitable exception to AEDPA's one-year statute of limitations if he makes a credible showing of actual innocence." *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)); *Souter v. jones*, 395 F.3d 577, 599 (6th Cir. 2005). This type of actual-innocence claim "does not by itself provide a basis for relief . . . but is instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup v. Delo*, 513 U.S. 298, 315 (1995). Like equitable tolling, this exception is applied sparingly, and a petitioner bears the burden of demonstrating entitlement to the exception. *See Davis*, 900 F.3d at 326; *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011). The standard is "demanding" and "permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citing *Schlup*, 513 U.S. at 327); *see also McQuiggin*, 569 U.S. at 385.

To demonstrate the actual innocence that would allow a court to consider a time-barred constitutional claim, a habeas petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Connolly v. Howes*, 304 F. App'x 412, 417 (6th Cir. 2008) (quoting *Schlup*, 513 U.S. at 316). A court presented with new evidence must consider

it in light of "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id*. (quoting *House*, 547 U.S. at 538). In order to grant a petitioner's gateway based claim of actual innocence, a court must be persuaded that "in light of the new evidence, no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 385 (citing *Schlup*, 513 U.S. at 329); *Connolly*, 304 F. App'x at 417. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Even a prisoner who has entered a guilty or no contest plea can invoke the actual innocence exception. *Connolly*, 304 F. App'x at 418-19. When a petitioner asserts actual innocence after entering a no contest plea, the court must consider "any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy." *Id*. at 418 (citing *Bousley*, 523 U.S. at 624). That is, the court looks not just at the facts to which a petitioner admitted when he pled, but also at "any other evidence of his guilt that the Government has." *Id*. Importantly, "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, a petitioner's showing of actual innocence must also extend to those charges." *Bousley*, 523 U.S. at 624. *See also Vanwinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011) (quoting *Bousley*); *Vosgien v. Persson*, 742 F.3d 1131, 1136 (9th Cir. 2014) (noting that "[t]he Court's concern in *Bousley* about 'more serious charges' in the guilty plea context was limited to the circumstance in which more serious charges were dropped during the bargaining process and then omitted from the guilty plea" and a petitioner could possibly "escape criminal liability because of a prosecutor's leniency in agreeing to conviction on less serious, but now invalid, counts in obtaining the plea."); *Johnson v. Brown*, No. 13-242, 2016 WL 4261761, at *2 (E.D. Ky.

14

Aug. 12, 2016) (citing *Bousley* and requiring petitioner who pled guilty to complicity to incest in exchange for dismissal of first degree sodomy to show actual innocence as to dismissed charges to avoid "exploiting a state prosecutor's leniency").

As an initial matter, Petitioner raises his actual innocence argument for the first time in his "Amended Pro Se Traverse," and he titles his argument concerning actual innocence as "Ground Four." (ECF No. 13.) Petitioner has not sought leave to amend his petition, and a habeas petitioner may not raise new arguments for the first time in a traverse, or in this case, an amended traverse. *See Jalowiec v. Bradshaw*, 657 F.3d 293, 312 (6th Cir. 2011) (citing *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005)). Thus, his new "claim" is not properly before the Court.

Even if Petitioner's actual innocence argument was properly presented, it is unavailing. Petitioner's "new evidence" offered in support of his claim of actual innocence amounts to a statement of alibi, as to count nineteen only. Specifically, Petitioner claims that as to count nineteen, he "can prove he was at Casa del Taco during the time frame alleged." (ECF No. 13, at PAGEID # 521.) According to Petitioner, he drove his son to a job interview at Casa del Taco during the time frame of the alleged offense, and the manager recalls Petitioner's new truck being there "because it was flashy." (*Id*.) Petitioner does not name the manager, or attach any statement or an Affidavit from the manager, nor does Petitioner allege that the unnamed manager actually observed Petitioner in the "flashy" truck. Instead, Petitioner claims that he is the only person who could have been driving the truck, because it was new and "no body drove my truck." (*Id*. at 521-22.) This evidence, plainly, is not new, or sufficient, to establish actual innocence.

Petitioner's assertions regarding his supposed alibi defense are troublesome for a number of reasons, including that Petitioner expressly waived his right to have his son and the unnamed manager testify on his behalf at trial, when he elected to enter into a negotiated plea agreement to

15

three counts of sexual battery. That plea agreement resulted in the dismissal of approximately seventeen charges, many of which were more serious charges of Rape of a minor under thirteen. (ECF No. 6, at PAGEID # 26-34, 75-79.) The purportedly "new" alibi evidence, which would have been known to Petitioner at the time he entered into a negotiated plea, only applies to count nineteen. Petitioner has not offered any reasons why he is also actually innocent of the other two counts of sexual battery to which he pled, *i.e.* counts eleven and thirteen, or the many Rape counts that were dismissed in exchange for his plea.

Petitioner's alibi defense is also suspect, because Petitioner has not named or provided a statement from the manager who allegedly saw his truck at Casa del Taco, and it is not even clear if this witness would be useful in establishing an alibi for Petitioner, given that Petitioner does not allege this witness saw *him* at Casa del Taco. However, even assuming Petitioner was at Casa del Taco while his son had a job interview there on September 21, 2016, this fact would not cause the Court to lose all confidence in Petitioner's plea. As the state court of appeals noted, there exists "extreme difficulty in obtaining specific dates and time evidence for the inclusion in a Bill of Particulars when you are dealing with a child rape case." *State v. Camelin*, No. 18CA3642, 2019 WL 1368416, *1-2. The victim in this case was a minor child living with Petitioner, and Petitioner had continual, ongoing access to the victim.

In short, none of Petitioner's purportedly exculpatory evidence provides reliable support for his assertion of actual innocence. Because this case would have turned on the credibility of defense and prosecution witnesses, this Court cannot say it is likely that no reasonable juror would have found Petitioner guilty. The prosecution could have called the alleged victim, who was present in court for sentencing, to testify about the extent of the sexual abuse she suffered in her home, and the forensic examiner from the Child Protection Center could have been called to testify

regarding the nature of the victim's disclosures. During the plea hearing, Petitioner did not dispute the facts read to support his plea of no contest to counts eleven, thirteen and nineteen. In support of counts eleven and nineteen, the prosecutor's statement of facts revealed that Petitioner engaged in vaginal intercourse with his minor child, and as to count thirteen, that Petitioner engaged in unspecified intercourse with the victim. As the Fourth District Court of Appeals noted, evidence obtained at a pretrial hearing indicated that the victim was vague in her recollection of specific dates and times, because her abuse "occurred on an almost daily basis." *Camelin*, 2019 WL 1368416, *1-2.

Petitioner has not offered "new reliable evidence," that is "'so strong that a court cannot have confidence in the outcome' of the plea,'" *Connolly*, 304 F. App'x at 419 (citing *Schlup*, 513 U.S. at 316). Furthermore, he has failed to offer evidence suggesting that he is actually innocent of counts eleven or thirteen, nor does he suggest that he is actually innocent of the many more serious dismissed counts. Accordingly, the Undersigned **RECOMMENDS** the petition be **DISMISSED** as untimely.

### IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED**, (ECF No. 7), and the Petition be **DISMISSED with prejudice**, because it is time-barred. Because the Petition is untimely, the Undersigned **RECOMMENDS** that Petitioner's motion for discovery, (ECF No. 14), and an evidentiary hearing, (ECF No. 15.), be **DENIED**.

Because no reasonable jurist would disagree with this conclusion finding the petition untimely, Petitioner should not be granted a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020). Further, this

Court should certify to the Sixth Circuit that any appeal would be objectively frivolous, and therefore Petitioner should not be permitted to proceed in forma pauperis on appeal.

## **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.

Date: March 8, 2022  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE